IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RENE GUERRERO, PATRICIA GUERRERO,<br>ARNULFO GUERRERO, ANTONIO GUERRERO JR.,<br>CLARIBEL REYES, and MAGDALENA GUERRERO,<br>on her own behalf and on behalf of<br>LILYBETH GUERRERO,<br><br>      Plaintiffs,<br><br>      v.<br><br>CHICAGO POLICE OFFICERS JEROME FINNIGAN,<br>JOHN BURZINSKI, BARTOSZ MAKA,<br>JOHN HURLEY, GUADALUPE SALINAS,<br>FRANK VILLAREAL, DONOVAN MARKIEWICZ,<br>KEITH HERRERA, ROBERT BARTLETT,<br>PATRICK QUINN, MICHAEL SMITKA,<br>KEITH SAVERSON, ANTHONY MARTIN,<br>KEITH RIGAN, RAYMOND PIWNICKI,<br>DUSTIN ROSCOE, PETER ZYGOWICZ,<br>BRIAN FERGUSON, JOHN MCGOVERN,<br>BRIAN QUINN, and UNKNOWN CHICAGO<br>POLICE OFFICERS; PHILIP CLINE,<br>superintendent of the Chicago Police<br>Department; TISA MORRIS, former chief<br>administrator of the Office of<br>Professional Standards; and DEBRA KIRBY,<br>head of the Internal Affairs Division;<br>in their individual capacities; and<br>the CITY OF CHICAGO,<br><br>      Defendants. | 07 C 1015<br><br>Judge Kocoras<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

NOW COME Plaintiffs, RENE GUERRERO, PATRICIA GUERRERO,

ARNULFO GUERRERO, ANTONIO GUERRERO JR., CLARIBEL REYES, and

MAGDALENA GUERRERO, on her own behalf and on behalf of LILYBETH

GUERRERO, through their attorneys, LOEVY & LOEVY, and complaining

of Defendants, CHICAGO POLICE OFFICERS JEROME FINNIGAN, JOHN

BURZINSKI, BARTOSZ MAKA, JOHN HURLEY, GUADALUPE SALINAS, FRANK
VILLAREAL, DONOVAN MARKIEWICZ, KEITH HERRERA, ROBERT BARTLETT,
PATRICK QUINN, MICHAEL SMITKA, KEITH SAVERSON, ANTHONY MARTIN,
KEITH RIGAN, RAYMOND PIWNICKI, DUSTIN ROSCOE, PETER ZYGOWICZ,
BRIAN FERGUSON, JOHN MCGOVERN, BRIAN QUINN, and UNKNOWN CHICAGO
POLICE OFFICERS; PHILIP CLINE, superintendent of the Chicago
Police Department; TISA MORRIS, former chief administrator of the
Office of Professional Standards; DEBRA KIRBY, head of the
Internal Affairs Division; and the CITY OF CHICAGO, and allege as
follows:

## Introduction

1.      This action, arising out of the abuse of
Plaintiffs by indicted "Special Operations" officers Jerome
Finnigan, Frank Villareal, Keith Herrera, and other Chicago
police officers, is brought pursuant to 42 U.S.C. § 1983 to
redress the deprivation under color of law of Plaintiffs' rights
as secured by the United States Constitution.

## Jurisdiction and Venue

2.      This Court has jurisdiction of the action pursuant
to 28 U.S.C. § 1331 and § 1367.  Venue is proper under 28 U.S.C.
§ 1391(b).  All parties reside in this judicial district, and the
events giving rise to the claims asserted herein occurred within
the district.

2

## Parties

3.    Plaintiff Rene Guerrero, a 30-year-old resident of Cook County, Illinois, is paralyzed from the chest down.

4.    Plaintiff Patricia Guerrero, a 25-year-old resident of Cook County, Illinois, works for a printing company and is studying for a bachelor's degree in business administration.  She is married to Rene Guerrero, and together they have a 4-year-old son, Omar.

5.    Plaintiff Arnulfo Guerrero, a 23-year-old resident of Cook County, Illinois, works in the granite business.

6.    Plaintiff Antonio Guerrero Jr., a 21-year old resident of Cook County, Illinois, works in the granite business.

7.    Plaintiff Claribel Reyes is a 20-year-old resident of Cook County, Illinois.  Together with Antonio Guerrero, Jr., she has a 3-year-old son, Antonio Guerrero III.

8.    Plaintiff Lilybeth Guerrero, a 15-year-old resident of Cook County, Illinois, is a sophomore in high school.

9.    Plaintiff Magdalena Guerrero, a 51-year-old resident of Cook County, Illinois, is the mother of Plaintiffs Rene, Arnulfo, Antonio Jr. and Lilybeth Guerrero.

10.   Defendants Jerome Finnigan, John Burzinksi, Bartosz Maka, John Hurley, Guadalupe Salinas, Frank Villareal, Donovan Markiewicz, Keith Herrera, Robert Bartlett, Patrick Quinn, Michael Smitka, Keith Saverson, Anthony Martin, Keith

3

Rigan, Raymond Pinwicki, Dustin Roscoe, Peter Zygowicz, Brian Ferguson, John McGovern, Brian Quinn, and the Unknown Defendant Officers (referred to as "Defendant Officers") are Chicago Police Officers. At all times relevant to this Complaint, the Defendant Officers acted under color of state law as police officers of the City of Chicago and acted within the scope of their employment.

11. Defendant Philip Cline is the superintendent of the Chicago Police Department. As superintendent, Cline is responsible for the overall management of the Chicago Police Department, and at all times relevant to this Complaint acted in the course and within the scope of his employment. Superintendent Cline is sued in his individual capacity.

12. Defendant Tisa Morris was the chief administrator of the Chicago Police Department's Office of Professional Standards ("OPS"), and at all times relevant to this Complaint acted in the course and within the scope of her employment as such. Morris is sued in her individual capacity for her actions and omissions, by virtue of her authority as Chief Administrator of the OPS.

13. Defendant Debra Kirby presently serves as the head of the Chicago Police Department's Internal Affairs Division ("IAD"), and at all times relevant to this Complaint acted in the course and within the scope of her employment. Kirby is sued in

4

her individual capacity for her actions and omissions, by virtue of her authority as head of the IAD.

14. Defendant City of Chicago ("City") is an Illinois municipal corporation that operates the Chicago Police Department ("Department"). The City Council is the final policy maker for the City of Chicago with regard to police policies and practices. The City Council has delegated to the Superintendent of Police the authority and responsibility for the day to day operation of the Department.

## Background

15. On the evening of May 2, 2005, Plaintiff Rene Guerrero was at home with his 4-year-old son, Omar, and his brother Plaintiff Arnulfo Guerrero, when they heard loud banging on the front door.

16. Arnulfo walked toward the door, which was locked, but before he could reach it, the door was pried open with a heavy object. Approximately six of the Defendant Officers, without announcing their office, burst into the apartment with guns drawn.

17. Immediately, one of the Defendant Officers threw Arnulfo face first onto the hard living room floor, swore at him, and put him in handcuffs. The officer kept Arnulfo pinned to the floor with a foot on Arnulfo's back.

5

18.   One or more of the Defendant Officers sent 4-year-old Omar, who was barefoot, outdoors, where the temperature was in the forties.

19.   Several of the Defendant Officers grabbed Rene, flipped him face-down, handcuffed him, and began to ask him repeatedly where "the drugs" were. Rene insisted that he was a family man and had no drugs.

20.   Defendant Officers ransacked the Guerreros' apartment, destroying many of their things. When Rene protested, one Defendant Officer said words to the effect of: "shut the fuck up you handicapped mother fucker," while other Defendant Officers laughed.

21.   Another Defendant Officer commented that it would be funny to see Rene try to get up and run.

22.   One or more of the Defendant Officers then threw Rene onto his back and told him to sit up. When he responded that he could not sit up due to his disability, the officers grabbed Rene under his elbows and dragged him face-down into another room.

23.   During this time, Defendant Officers brought Plaintiff Antonio Guerrero Jr. into the apartment, handcuffed. Upon witnessing the officers dragging Rene, he tried to explain Rene's disability. In response, another Defendant Officer pushed

6

Antonio to the ground face first, seriously hurting his bad knee in the process.

24. One or more Defendant Officers proceeded to steal Rene Guerrero's and Plaintiff Patricia Guerrero's property, including cash, DVD movies, a new cellular phone, and jewelry.

25. Meanwhile, many of the Defendant Officers also broke into the apartment upstairs. That apartment is a completely separate residence in which Plaintiffs Antonio Guerrero Jr., Arnulfo Guerrero, Lilybeth Guerrero, Magdalena Guerrero, and Claribel Reyes resided.

26. Inside that apartment, Defendant Officers handcuffed Magdalena, and banged her head on a door frame as they pushed her outside and into the cold.

27. Defendant Officers handcuffed together 18-year-old Claribel and 13-year-old Lilybeth, injuring Lilybeth's wrists. The officers brought Lilybeth and Claribel outside, underdressed for the weather, leaving Claribel's 1-year-old baby alone in the apartment. The officers told them to shut up, and called them derogatory names.

28. After Claribel begged to be allowed back into the apartment, to be with her child, one of the Defendant Officers brought the baby out into the cold clothed in nothing more than a diaper and a thin shirt.

7

29. During this time, Defendant Officers ransacked the upstairs apartment, destroying the family's property.

30. During the course of these events, one or more of the Defendant Officers also searched Plaintiffs' cars and damaged Patricia Guerrero's car in the process.

31. The Defendant Officers eventually placed Rene under arrest, and left the homes.

32. Soon thereafter, Antonio Guerrero Jr. called the local police station to complain about the Defendant Officers' actions, and asked that a police supervisor come to his home.

33. Instead of a supervisor, one of the Defendant Officers returned to the home. The Defendant Officer denied that he or the other officers had done anything wrong.

34. Meanwhile, Patricia Guerrero had arrived home to find her apartment torn apart, her family injured, and her husband missing. She called the local police station, and asked that a police supervisor not involved in the unlawful searches come to her home to witness the abuse, damage, and theft committed by the Defendant Officers.

35. But instead of a supervisor, the same Defendant Officer who had responded to Antonio Jr.'s call once again returned. The Defendant Officer again denied that anyone was abused and that anything was missing from the home, and refused to report Patricia's allegations of misconduct.

8

36. After the Defendant Officer left, Patricia promptly called the station and explained that they had yet again sent one of the officers who had himself committed the abuse. She again asked that a supervisor unrelated to the violations be sent to talk with her. However, a Department employee told her that no one else would be sent.

37. Meanwhile, now at the police station, Rene was handcuffed in a small room with no windows. He repeatedly told the Defendant Officers holding him that he needed a catheter in order to urinate. He also told officers that he needed his medications, which he took every few hours to prevent seizures and other complications from his paralysis. His requests were ignored.

38. That night, Patricia brought Rene's catheter and medication to the police station. However, one or more of the Defendant Officers turned her away without accepting the items.

39. In all, Rene was held for over 25 hours at the police station before he was finally taken to a local hospital, where he was provided with medication, a catheter, and medical treatment.

40. The City of Chicago has never acknowledged the Plaintiffs' complaints that the Defendant Officers illegally entered and searched their homes, physically abused them, and stole their property.

9

## The Culpability of Chicago and
## Police Department Supervisors

41. For years, Defendant Officers Jerome Finnigan, Keith Herrera, Frank Villareal, and other Chicago police officers within the "Special Operations" unit regularly committed criminal acts like those experienced by the Guerreros.

42. Over that time period, the Special Operations officers regularly broke into civilians' homes and businesses to commit armed theft, physical violence, and even kidnaping.

43. In late 2006, the Cook County State's Attorney's office brought criminal charges against Defendants Finnigan, Herrera, Villareal, and four other officers said to be their partners-in-crime within the Department. The charges were brought, independent of the Chicago Police Department, only after Cook County prosecutors became suspicious about the Special Operations officers' consistent failure to appear in criminal court to testify on charges resulting from arrests they had made.

44. As a result of Cook County's investigation, Defendant Finnigan now faces up to 30 years in prison for the abuses he committed as a Chicago police officer.

45. For at least four years before the Special Operations officers were indicted, the City knew about their criminality through voluminous citizen complaints and lawsuits brought against them. Against Defendant Finnigan alone,

10

civilians have brought multiple lawsuits that the City has settled.

46. Despite this notice, the City did nothing to stop the officers' misconduct. If it were not for Cook County's efforts, the officers would still be on the street.

47. The City's inaction regarding the Special Operations officers' repeated misconduct is just one example of the City's widespread failure control its officers. The City of Chicago maintains a *de facto* policy, practice and custom of failing to train, supervise, discipline, and control its police officers.

48. Municipal policy-makers have long been aware of the City's policy, practice and custom of failing to properly train, supervise and discipline its police officers:

a. In 1999, the then-Superintendent of Police gave a speech highlighting problems with the City of Chicago's policies and practices. Superintendent Hillard spoke specifically of the need for early detection of potential problem officers, an effective disciplinary system, and officer accountability for their misconduct.

b. In 2001, the Justice Coalition of Greater Chicago ("JCGC"), composed of more than a hundred community groups, concluded in a study that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor,

11

punish and prevent police misconduct and brutality. The JCGC findings were presented to Mayor Daley, the police superintendent, and the Chicago Police Board.

c. In the 2002 arbitration for the police contract with the Fraternal Order of Police, the City recognized that it needed a way to identify officers who engage in repeated misconduct, stating that "the current system is flawed because 'not sustained' complaints cannot be considered in new investigations, even if they might suggest a pattern of inappropriate conduct."

d. In 2003, a federal jury in the case of Garcia v. City of Chicago, No. 01 C 8945, 2003 WL 22175618, at *2 (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department. The "City of Chicago's custom and practice of not adequately investigating, disciplining, or prosecuting off-duty Chicago police officers who use excessive force against individuals" was found to have directly caused the constitutional harm. Id. at *1.

e. By its own accounting, in 2004 the City of Chicago sustained civilians' allegations against officers in only 11 of 1,684 allegations of civil rights violations - less than 1

12

percent. A far smaller percentage of officers were actually disciplined for their misconduct. The Department's annual reports from 2001, 2002 and 2003 reveal similarly high numbers of civil rights complaints against its officers and similarly low rates of sustaining those complaints.

49. Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address these failures. Despite their knowledge of the inadequacy of the City's supervision, training and discipline of Chicago police officers, Defendants Morris and Kirby (the chiefs of the City's police investigatory agencies) and Defendant Superintendent Cline have failed to reform the broken system in any meaningful way. Redress that was specifically promised by the City Council and the Superintendent has gone unfilled.

50. The City has failed to institute an "early warning" system to identify and track patterns of abuse by individual officers or groups of officers. For instance, the City fails to consider prior complaints against officers to identify and respond to patterns of misconduct by its officers.

51. As a result of the City's policies, practices and customs, its officers are emboldened to commit misconduct against civilians by their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

13

52. The City not only failed to prevent the Special Operations officers from abusing civilians, but actually caused their conduct. Knowing of the City's policies and practices, which allow even the most repetitive abusers to go unmonitored and unpunished, the Defendant Officers had nothing to fear from the City when they abused the Guerrero family.

53. Indeed, the Chicago City Council's own Chairman of the Committee on Police and Fire declared in a January 2000 resolution, "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

## Count I - 42 U.S.C. § 1983
### Excessive Force

54. Each Paragraph of this Complaint is incorporated as if fully stated herein.

55. As described above, the conduct of one or more of the Defendant Officers, acting under color of law, constituted excessive force in violation of the United States Constitution.

56. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

57. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

58. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City in that:

a. As a matter of both policy and practice, the City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

c. As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. Police officers routinely fail to

15

report instances of police misconduct and lie to protect each
other from punishment, and go un-disciplined for doing so.

        e.    The City of Chicago has failed to act to
remedy the patterns of abuse, despite actual knowledge of the
same, thereby causing the types of injuries alleged here;

        59.   The misconduct described in this Count was caused
and participated in by Defendants Cline, Morris and Kirby (the
"Supervisory Defendants") in that:

        a.    The Supervisory Defendants knew that the City
maintained the widespread and settled policy and practice of
failing to adequately train, supervise, discipline, and otherwise
control its officers. They also knew that the maintenance of
these practices would result in preventable police abuse,
including the type of unconstitutional abuse inflicted on
Plaintiffs.

        b.    The Supervisory Defendants oversaw,
acquiesced in, and even condoned the above-described policies and
practices and refused to take steps to correct them.

        c.    More specifically, the Supervisory Defendants
caused and participated in the denial of Plaintiff's
constitutional rights by, among other things:

                –      failing to monitor police officers and groups
                      of officers who violate civilians'
                      constitutional rights;

16

- failing to discipline police officers who violate civilians' constitutional rights;
- and failing to implement an effective early warning system to identify police officers and groups of officers who systematically violate civilians' constitutional rights.

d. The Supervisory Defendants were, at all times material to this Complaint, deliberately indifferent to the rights and safety of Plaintiffs, as evidenced by their support of these policies and practices and their obvious consequences.

60. As a result of the Defendant Officers' unjustified and excessive use of force, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiffs suffered physical and emotional injuries, and other damages.

### Count II – 42 U.S.C. § 1983
### Unreasonable Search and Seizure

61. Each Paragraph of this Complaint is incorporated as if fully stated herein.

62. As described above, the Defendant Officers, acting under color of law, conducted an unconstitutional search and seizure.

63. More specifically, Defendant Officers used unlawful violence to gain entry to Plaintiffs' homes and conducted an extended search of their homes, belongings and vehicles in an unlawful and unjustified manner.

17

64.   Neither the entry nor the manner by which the searches were conducted were lawfully justified by the circumstances confronting the officers.

65.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

66.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

67.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in the manner described more fully above.

68.   The misconduct described in this Count was caused and participated in by Defendants Cline, Morris and Kirby (the "Supervisory Defendants") in the manner described more fully above.

69.   As a result of the Defendant Officers' unconstitutional search and seizure, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiffs suffered emotional injuries, and other damages.

### Count III - 42 U.S.C. § 1983
### Denial of Medical Attention

70.   Each Paragraph of this Complaint is incorporated as if fully stated herein.

18

71. As described more fully above, while incarcerated for over 24 hours at a Chicago police station, Rene Guerrero was denied necessary medical attention.

72. In this manner, the conduct of the Defendant Officers was objectively unreasonable and they were deliberately indifferent to Rene Guerrero's objectively serious medical needs.

73. As a result of the Defendant Officers' objectively unreasonable conduct and deliberate indifference to his necessary medical needs, Rene Guerrero suffered damages, including but not limited to physical injury and mental distress.

## Count IV - 42 U.S.C. § 1983
## Equal Protection

74. Each Paragraph of this Complaint is incorporated as if fully stated herein.

75. As described more fully above, Defendant Officers, while acting individually, jointly, and in conspiracy, as well as under color of law, denied Plaintiffs the equal protection of the law in violation of their Constitutional rights.

76. In their illegal searching and in their use of excessive force, Defendant Officers treated Plaintiffs differently than other similarly-situated individuals on the basis of their membership in a particular class.

77. Specifically, Defendant Officers victimized Plaintiffs on the basis of their race and/or ethnicity, Latino.

19

78.   Defendant Officers' conduct was motivated by racial animus and discriminatory purpose, and was not rationally related to any governmental interest.  It affected minorities in a grossly disproportionate manner vis-a-vis similarly-situated Caucasian indviduals, including that a disproportionate amount of Defendant Finnigan's and other Special Operations officers' victims have been Latino.

79.   As a result of the Defendant Officers' wrongful infringement of their rights, Plaintiffs suffered damages, including but not limited to physical injury and mental distress.

## Count V - 42 U.S.C. § 1983
### Failure to Intervene

80.   Each Paragraph of this Complaint is incorporated as if fully stated herein.

81.   During the Constitutional violations committed against Plaintiffs, as described more fully above, unknown Defendant Officers stood by and watched without intervening to prevent the violations to which Plaintiffs were subjected.

82.   The unknown Defendant Officers had a reasonable opportunity to prevent the violations of Plaintiffs' rights to be free from excessive force and illegal searching had they been so inclined, but failed to do so.

20

83. The unknown Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

84. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in the manner more fully described above.

85. The misconduct described in this Count was caused and participated in by Defendants Cline, Morris and Kirby (the "Supervisory Defendants") in the manner more fully described above.

86. As a result of the failure of these Defendant Officers to intervene to prevent the violations, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiffs suffered pain and injury, as well as emotional distress.

### Count VI - 42 U.S.C. § 12132
### Title II of the Americans with Disabilities Act

87. Each Paragraph of this Complaint is incorporated as if fully stated herein.

88. Plaintiff Rene Guerrero, a paraplegic, suffers from a physical impairment which substantially limits for him many of life's major activities.

21

89.   Defendant City of Chicago, a public entity,
discriminated against Mr. Guerrero because of his disability and
denied him the benefits of its public services.

90.   The City of Chicago denied Mr. Guerrero humane
treatment and services during his arrest and detention, such as
proper physical movement and the ability to urinate while in
extended Department custody.

91.   As a result of the City's denial to Mr. Guerrero
of its public services, he suffered pain and injury, as well as
emotional distress.

### Count VII  - Supplemental State Law Claim
### Indemnification

92.   Each Paragraph of this Complaint is incorporated
as if fully stated herein.

93.   In Illinois, public entities are directed to pay
any tort judgment for compensatory damages for which employees
are liable within the scope of their employment activities. 735
ILCS 10/9-102.

### Requests for Relief

Plaintiffs, RENE GUERRERO, PATRICIA GUERRERO, ARNULFO
GUERRERO, ANTONIO GUERRERO JR., CLARIBEL REYES, and MAGDALENA
GUERRERO, on her own behalf and on behalf of LILYBETH GUERRERO,
respectfully request that the Court:

A.  enter judgment in their favor and against Defendants
    CITY OF CHICAGO, CHICAGO SUPERVISORS PHILIP CLINE, TISA
    MORRIS, and DEBRA KIRBY, CHICAGO POLICE OFFICERS JEROME
    FINNIGAN, JOHN BURZINSKI, BARTOSZ MAKA, JOHN HURLEY,
    GUADALUPE SALINAS, FRANK VILLAREAL, DONOVAN MARKIEWICZ,
    KEITH HERRERA, ROBERT BARTLETT, PATRICK QUINN, MICHAEL
    SMITKA, KEITH SAVERSON, ANTHONY MARTIN, KEITH RIGAN,
    RAYMOND PIWNICKI, DUSTIN ROSCOE, PETER ZYGOWICZ, BRIAN
    FERGUSON, JOHN MCGOVERN, BRIAN QUINN, and UNKNOWN
    CHICAGO POLICE OFFICERS;

B.  award compensatory damages against Defendants CITY OF
    CHICAGO, CHICAGO SUPERVISORS PHILIP CLINE, TISA MORRIS,
    and DEBRA KIRBY, CHICAGO POLICE OFFICERS JEROME
    FINNIGAN, JOHN BURZINSKI, BARTOSZ MAKA, JOHN HURLEY,
    GUADALUPE SALINAS, FRANK VILLAREAL, DONOVAN MARKIEWICZ,
    KEITH HERRERA, ROBERT BARTLETT, PATRICK QUINN, MICHAEL
    SMITKA, KEITH SAVERSON, ANTHONY MARTIN, KEITH RIGAN,
    RAYMOND PIWNICKI, DUSTIN ROSCOE, PETER ZYGOWICZ, BRIAN
    FERGUSON, JOHN MCGOVERN, BRIAN QUINN, and UNKNOWN
    CHICAGO POLICE OFFICERS;

C.  award attorneys' fees against Defendants CITY OF
    CHICAGO, CHICAGO SUPERVISORS PHILIP CLINE, TISA MORRIS,
    and DEBRA KIRBY, CHICAGO POLICE OFFICERS JEROME
    FINNIGAN, JOHN BURZINSKI, BARTOSZ MAKA, JOHN HURLEY,

23

GUADALUPE SALINAS, FRANK VILLAREAL, DONOVAN MARKIEWICZ, KEITH HERRERA, ROBERT BARTLETT, PATRICK QUINN, MICHAEL SMITKA, KEITH SAVERSON, ANTHONY MARTIN, KEITH RIGAN, RAYMOND PIWNICKI, DUSTIN ROSCOE, PETER ZYGOWICZ, BRIAN FERGUSON, JOHN MCGOVERN, BRIAN QUINN, and UNKNOWN CHICAGO POLICE OFFICERS;

D.   award punitive damages against Defendants CHICAGO SUPERVISORS PHILIP CLINE, TISA MORRIS, and DEBRA KIRBY, CHICAGO POLICE OFFICERS JEROME FINNIGAN, JOHN BURZINSKI, BARTOSZ MAKA, JOHN HURLEY, GUADALUPE SALINAS, FRANK VILLAREAL, DONOVAN MARKIEWICZ, KEITH HERRERA, ROBERT BARTLETT, PATRICK QUINN, MICHAEL SMITKA, KEITH SAVERSON, ANTHONY MARTIN, KEITH RIGAN, RAYMOND PIWNICKI, DUSTIN ROSCOE, PETER ZYGOWICZ, BRIAN FERGUSON, JOHN MCGOVERN, BRIAN QUINN, and UNKNOWN CHICAGO POLICE OFFICERS, all in their individual capacity; and

E.   grant any other relief this Court deems just and appropriate.

24

## Jury Demand

Plaintiffs, RENE GUERRERO, PATRICIA GUERRERO, ARNULFO GUERRERO, ANTONIO GUERRERO JR., CLARIBEL REYES, and MAGDALENA GUERRERO, on her own behalf and on behalf of LILYBETH GUERRERO, demand a trial by jury under Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

Attorneys for Plaintiffs

Arthur Loevy
Jon Loevy
Amanda Antholt
Samantha Liskow
LOEVY & LOEVY
312 North May Street, Ste. 100
Chicago, IL 60607
(312) 243-5900

25

**CERTIFICATE OF SERVICE**

I, Samantha Liskow, an attorney, certify that on May 1, 2007, I served this document by ECF electronic filing as to each party who is represented by counsel who uses electronic filing.

S/ Samantha Liskow