# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RENE GUERRERO, et al., | ) |
| | ) 07 C 1015 |
| Plaintiffs, | ) |
| | ) Judge Charles Kocoras |
| v. | ) |
| | ) |
| CITY OF CHICAGO, et al., | ) |
| | ) |
| Defendants. | ) |

## ANSWER TO AMENDED COMPLAINT

Defendant, Jerome Finnigan ("Defendant Finnigan"), through his attorneys, submits the following Answer, to the extent the allegations are directed at Defendant Finnigan, Affirmative Defenses, and Jury Demand to Plaintiffs' Amended Complaint.

### Introduction

1.      This action, arising out of the abuse of Plaintiffs by indicted "Special Operations" officer Jerome Finnigan, Frank Villareal, Keith Herrera, and other Chicago police officers, is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

**ANSWER:**      Defendant Finnigan admits that Plaintiffs brings this action under 42 U.S.C. § 1983.  Defendant Finnigan denies the remaining allegations contained in this paragraph.

### Jurisdiction and Venue

2.      This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and § 1367. Venue is proper under 28 U.S.C.  § 1391(b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

**ANSWER:**      Defendant Finnigan admits the allegations contained in the first two sentences of this paragraph.  Defendant Finnigan admits that Plaintiffs have alleged that all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## Parties

3.    Plaintiff Rene Guerrero, a 30-year-old resident of Cook County, Illinois, is paralyzed from the chest down.

**ANSWER:**    Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in this paragraph.

4.    Plaintiff Patricia Guerrero, a 25-year-old resident of Cook County, Illinois, works for a printing company and is studying for a bachelor's degree in business administration.  She is married to Rene Guerrero, and together they have a 4-year-old son, Omar.

**ANSWER:**    Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in this paragraph.

5.    Plaintiff Arnulfo Guerrero, a 23-year-old resident of Cook County, Illinois, works in the granite business.

**ANSWER:**    Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in this paragraph.

6.    Plaintiff Antonio Guerrero Jr., a 21-year old resident of Cook County, Illinois, works in the granite business.

**ANSWER:**    Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in this paragraph.

7.    Plaintiff Claribel Reyes is a 20-year-old resident of Cook County, Illinois. Together with Antonio Guerrero, Jr., she has a 3-year-old son, Antonio Guerrero III.

**ANSWER:**    Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in this paragraph.

8.    Plaintiff Lilybeth Guerrero, a 15-year-old resident of Cook County, Illinois, is a sophomore in high school.

**ANSWER:**    Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in this paragraph.

9.    Plaintiff Magdalena Guerrero, a 51-year-old resident of Cook County, Illinois, is

the mother of Plaintiffs Rene, Arnulfo, Antonio Jr. and Lilybeth Guerrero.

**ANSWER:**   Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

10.   Defendants Jerome Finnigan, John Burzinksi, Bartosz Maka, John Hurley, Guadalupe Salinas, Frank Villareal, Donovan Markiewicz, Keith Herrera, Robert Bartlett, Patrick Quinn, Michael Smitka, Keith Saverson, Anthony Martin, Keith Rigan, Raymond Pinwicki, Dustin Roscoe, Peter Zygowicz, Brian Ferguson, John McGovern, Brian Quinn, and the Unknown Defendant Officers (referred to as "Defendant Officers") are Chicago Police Officers.  At all times relevant to this Complaint, the Defendant Officers acted under color of state law as police officers of the City of Chicago and acted within the scope of their employment.

**ANSWER:**   Defendant Finnigan admits that at all times material to the Complaint, he was a

City of Chicago police officer, and acted in the course and scope of his employment and under

color of state law, ordinance, and/or regulation.  Defendant Finnigan makes no answer to the

remaining allegations contained in this paragraph because they are directed at one or more co-

defendant.

11.   Defendant Philip Cline is the superintendent of the Chicago Police Department. As superintendent, Cline is responsible for the overall management of the Chicago Police Department, and at all times relevant to this Complaint acted in the course and within the scope of his employment.  Superintendent Cline is sued in his individual capacity.

**ANSWER:**   Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

12.   Defendant Tisa Morris was the chief administrator of the Chicago Police Department's Office of Professional Standards ("OPS"), and at all times relevant to this Complaint acted in the course and within the scope of her employment as such.  Morris is sued in her individual capacity for her actions and omissions, by virtue of her authority as Chief Administrator of the OPS.

**ANSWER:**   Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

13.   Defendant Debra Kirby presently serves as the head of the Chicago Police Department's Internal Affairs Division ("IAD"), and at all times relevant to this Complaint acted

in the course and within the scope of her employment. Kirby is sued in her individual capacity for her actions and omissions, by virtue of her authority as head of the IAD.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants..

14. Defendant City of Chicago ("City") is an Illinois municipal corporation that operates the Chicago Police Department ("Department"). The City Council is the final policy maker for the City of Chicago with regard to police policies and practices. The City Council has delegated to the Superintendent of Police the authority and responsibility for the day to day operation of the Department.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

## Background

15. On the evening of May 2, 2005, Plaintiff Rene Guerrero was at home with his 4-year-old son, Omar, and his brother Plaintiff Arnulfo Guerrero, when they heard loud banging on the front door.

**ANSWER:** Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the remaining allegations contained in this paragraph.

16. Arnulfo walked toward the door, which was locked, but before he could reach it, the door was pried open with a heavy object. Approximately six of the Defendant Officers, without announcing their office, burst into the apartment with guns drawn.

**ANSWER:** Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in this paragraph.

17. Immediately, one of the Defendant Officers threw Arnulfo face first onto the hard living room floor, swore at him, and put him in handcuffs. The officer kept Arnulfo pinned to the floor with a foot on Arnulfo's back.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

18. One or more of the Defendant Officers sent 4-yearold Omar, who was barefoot, outdoors, where the temperature was in the forties.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

19.     Several of the Defendant Officers grabbed Rene, flipped him face-down, handcuffed him, and began to ask him repeatedly where "the drugs" were. Rene insisted that he was a family man and had no drugs.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

20.     Defendant Officers ransacked the Guerreros' apartment, destroying many of their things. When Rene protested, one Defendant Officer said words to the effect of: "shut the fuck up you handicapped mother fucker," while other Defendant Officers laughed.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

21.     Another Defendant Officer commented that it would be funny to see Rene try to get up and run.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

22.     One or more of the Defendant Officers then threw Rene onto his back and told him to sit up. When he responded that he could not sit up due to his disability, the officers grabbed Rene under his elbows and dragged him face-down into another room.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

23.     During this time, Defendant Officers brought Plaintiff Antonio Guerrero Jr. into the apartment, handcuffed. Upon witnessing the officers dragging Rene, he tried to explain Rene's disability. In response, another Defendant Officer pushed Antonio to the ground face first, seriously hurting his bad knee in the process.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

24.     One or more Defendant Officers proceeded to steal Rene Guerrero's and Plaintiff Patricia Guerrero's property, including cash, DVD movies, a new cellular phone, and jewelry.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

25.     Meanwhile, many of the Defendant Officers also broke into the apartment upstairs. That apartment is a completely separate residence in which Plaintiffs Antonio Guerrero Jr., Arnulfo Guerrero, Lilybeth Guerrero, Magdalena Guerrero, and Claribel Reyes resided.

**ANSWER:**     Defendant Finnigan denies the allegations contained in the first sentence of this

paragraph. Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in the second sentence of this paragraph.

26.     Inside that apartment, Defendant Officers handcuffed Magdalena, and banged her

head on a door frame as they pushed her outside and into the cold.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

27.    Defendant Officers handcuffed together 18-year-old Claribel and 13-year-old Lilybeth, injuring Lilybeth's wrists. The officers brought Lilybeth and Claribel outside, underdressed for the weather, leaving Claribel's 1-year-old baby alone in the apartment. The officers told them to shut up, and called them derogatory names.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

28.    After Claribel begged to be allowed back into the apartment, to be with her child, one of the Defendant Officers brought the baby out into the cold clothed in nothing more than a diaper and a thin shirt.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

29.    During this time, Defendant Officers ransacked the upstairs apartment, destroying the family's property.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

30.    During the course of these events, one or more of the Defendant Officers also searched Plaintiffs' cars and damaged Patricia Guerrero's car in the process.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

31.    The Defendant Officers eventually placed Rene under arrest, and left the homes.

**ANSWER:**    Defendant Finnigan admits that Plaintiff Rene Guerrero was placed under arrest and that the police officers left Plaintiff Rene Guerrero's home. Defendant Finnigan denies the remaining allegations contained in this paragraph.

32.    Soon thereafter, Antonio Guerrero Jr. called the local police station to complain about the Defendant Officers' actions, and asked that a police supervisor come to his home.

**ANSWER:**    Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in this paragraph.

33.    Instead of a supervisor, one of the Defendant Officers returned to the home. The Defendant Officer denied that he or the other officers had done anything wrong.

**ANSWER:**    Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

34.     Meanwhile, Patricia Guerrero had arrived home to find her apartment torn apart, her family injured, and her husband missing. She called the local police station, and asked that a police supervisor not involved in the unlawful searches come to her home to witness the abuse, damage, and theft committed by the Defendant Officers.

**ANSWER:**     Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

35.     But instead of a supervisor, the same Defendant Officer who had responded to Antonio Jr.'s call once again returned. The Defendant Officer again denied that anyone was abused and that anything was missing from the home, and refused to report Patricia's allegations of misconduct.

**ANSWER:**     Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

36.     After the Defendant Officer left, Patricia promptly called the station and explained that they had yet again sent one of the officers who had himself committed the abuse. She again asked that a supervisor unrelated to the violations be sent to talk with her. However, a Department employee told her that no one else would be sent.

**ANSWER**     Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

37.     Meanwhile, now at the police station, Rene was handcuffed in a small room with no windows. He repeatedly told the Defendant Officers holding him that he needed a catheter in order to urinate. He also told officers that he needed his medications, which he took every few hours to prevent seizures and other complications from his paralysis. His requests were ignored.

**ANSWER:**     Defendant Finnigan admits that at the police station, Rene was handcuffed in a

small room with no windows, but denies any remaining allegations contained in the first

sentence. Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in the remainder of this paragraph.

38.     That night, Patricia brought Rene's catheter and medication to the police station. However, one or more of the Defendant Officers turned her away without accepting the items.

**ANSWER:**     Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

39.     In all, Rene was held for over 25 hours at the police station before he was finally taken to a local hospital, where he was provided with medication, a catheter, and medical treatment.

**ANSWER:**     Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

40.     The City of Chicago has never acknowledged the Plaintiffs' complaints that the Defendant Officers illegally entered and searched their homes, physically abused them, and stole their property.

**ANSWER:**     Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

### The Culpability of Chicago and
### Police Department Supervisors

41.     For years, Defendant Officers Jerome Finnigan, Keith Herrera, Frank Villareal, and other Chicago police officers within the "Special Operations" unit regularly committed criminal acts like those experienced by the Guerreros.

**ANSWER:**     To the extent directed at Defendant Finnigan, Defendant Finnigan denies the

allegations contained in this paragraph.

42.     Over that time period, the Special Operations officers regularly broke into civilians' homes and businesses to commit armed theft, physical violence, and even kidnapping.

**ANSWER:**     To the extent directed at Defendant Finnigan, Defendant Finnigan denies the

allegations contained in this paragraph.

43.     In late 2006, the Cook County State's Attorney's office brought criminal charges against Defendants Finnigan, Herrera, Villareal, and four other officers said to be their partners-in-crime within the Department.  The charges were brought, independent of the Chicago Police Department, only after Cook County prosecutors became suspicious about the Special Operations officers' consistent failure to appear in criminal court to testify on charges resulting from arrests they had made.

**ANSWER:**     Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

44.    As a result of Cook County's investigation, Defendant Finnigan now faces up to 30 years in prison for the abuses he committed as a Chicago police officer.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

45.    For at least four years before the Special Operations officers were indicted, the City knew about their criminality through voluminous citizen complaints and lawsuits brought against them. Against Defendant Finnigan alone, civilians have brought multiple lawsuits that the City has settled.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

46.    Despite this notice, the City did nothing to stop the officers' misconduct. If it were not for Cook County's efforts, the officers would still be on the street.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

47.    The City's inaction regarding the Special Operations officers' repeated misconduct is just one example of the City's widespread failure control its officers. The City of Chicago maintains a de facto policy, practice and custom of failing to train, supervise, discipline, and control its police officers.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

48.    Municipal policy-makers have long been aware of the City's policy, practice and custom of failing to properly train, supervise and discipline its police officers:

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

a.    In 1999, the then-Superintendent of Police gave a speech highlighting problems with the City of Chicago's policies and practices. Superintendent Hillard spoke specifically of the need for early detection of potential problem officers, an effective disciplinary system, and officer accountability for their misconduct.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

       b.     In 2001, the Justice Coalition of Greater Chicago ("JCGC"), composed of more than a hundred community groups, concluded in a study that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality. The JCGC findings were presented to Mayor Daley, the police superintendent, and the Chicago Police Board.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

       c.     In the 2002 arbitration for the police contract with the Fraternal Order of Police, the City recognized that it needed a way to identify officers who engage in repeated misconduct, stating that "the current system is flawed because 'not sustained' complaints cannot be considered in new investigations, even if they might suggest a pattern of inappropriate conduct."

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

       d.     In 2003, a federal jury in the case of <u>Garcia v. City of Chicago</u>, No. 01 C 8945, 2003 WL 22175618, at *2 (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department. The "City of Chicago's custom and practice of not adequately investigating, disciplining, or prosecuting off-duty Chicago police officers who use excessive force against individuals" was found to have directly caused the constitutional harm. <u>Id</u>. at *1.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

       e.     By its own accounting, in 2004 the City of Chicago sustained civilians' allegations against officers in only 11 of 1,684 allegations of civil rights violations - less than 1 percent. A far smaller percentage of officers were actually disciplined for their misconduct. The Department's annual reports from 2001, 2002 and 2003 reveal similarly high numbers of civil rights complaints against its officers and similarly low rates of sustaining those complaints.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

     49.    Although the City of Chicago has long been aware that its supervision, training and discipline of police officers is entirely inadequate, it has not enacted any measures to address

these failures. Despite their knowledge of the inadequacy of the City's supervision, training and discipline of Chicago police officers, Defendants Morris and Kirby (the chiefs of the City's police investigatory agencies) and Defendant Superintendent Cline have failed to reform the broken system in any meaningful way. Redress that was specifically promised by the City Council and the Superintendent has gone unfilled.

**ANSWER:**     Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

50.     The City has failed to institute an "early warning" system to identify and track patterns of abuse by individual officers or groups of officers. For instance, the City fails to consider prior complaints against officers to identify and respond to patterns of misconduct by its officers.

**ANSWER:**     Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

51.     As a result of the City's policies, practices and customs, its officers are emboldened to commit misconduct against civilians by their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

**ANSWER:**     Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

52.     The City not only failed to prevent the Special Operations officers from abusing civilians, but actually caused their conduct. Knowing of the City's policies and practices, which allow even the most repetitive abusers to go unmonitored and unpunished, the Defendant Officers had nothing to fear from the City when they abused the Guerrero family.

**ANSWER:**     Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

53.     Indeed, the Chicago City Council's own Chairman of the Committee on Police and Fire declared in a January 2000 resolution, "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

**ANSWER:**     Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

## Count I - 42 U.S.C. § 1983
## Excessive Force

54.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

**ANSWER:**    Defendant Finnigan restates his answers to the preceding paragraphs as if fully set forth herein.

55.    As described above, the conduct of one or more of the Defendant Officers, acting under color of law, constituted excessive force in violation of the United States Constitution.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

56.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

57.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

58.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the City in that:

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

a.    As a matter of both policy and practice, the City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

b.    As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

c.      As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

**ANSWER:**      Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

d.      City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so.

**ANSWER:**      Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

e.      The City of Chicago has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

**ANSWER:**      Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

59.      The misconduct described in this Count was caused and participated in by Defendants Cline, Morris and Kirby (the "Supervisory Defendants") in that:

**ANSWER:**      Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

a.      The Supervisory Defendants knew that the City maintained the widespread and settled policy and practice of failing to adequately train, supervise, discipline, and otherwise control its officers. They also knew that the maintenance of these practices would result in preventable police abuse, including the type of unconstitutional abuse inflicted on Plaintiffs.

**ANSWER:**      Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

b.      The Supervisory Defendants oversaw, acquiesced in, and even condoned the above-described policies and practices and refused to take steps to correct them.

**ANSWER:**      Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

c. More specifically, the Supervisory Defendants caused and participated in the denial of Plaintiff's constitutional rights by, among other things:

- failing to monitor police officers and groups of officers who violate civilians' constitutional rights;

- failing to discipline police officers who violate civilians' constitutional rights;

- and failing to implement an effective early warning system to identify police officers and groups of officers who systematically violate civilians' constitutional rights.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

d. The Supervisory Defendants were, at all times material to this Complaint, deliberately indifferent to the rights and safety of Plaintiffs, as evidenced by their support of these policies and practices and their obvious consequences.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

60. As a result of the Defendant Officers' unjustified and excessive use of force, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiffs suffered physical and emotional injuries, and other damages.

**ANSWER:** To the extent directed at Defendant Finnigan, Defendant Finnigan denies the allegations contained in this paragraph.

**Count II - 42 U.S.C. § 1983**
**Unreasonable Search and Seizure**

61. Each Paragraph of this Complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant Finnigan restates his responses to the preceding paragraphs as if fully set forth herein.

62. As described above, the Defendant Officers, acting under color of law, conducted an unconstitutional search and seizure.

**ANSWER:** Defendant Finnigan denies the allegations contained in this paragraph.

63.     More specifically, Defendant Officers used unlawful violence to gain entry to Plaintiffs' homes and conducted an extended search of their homes, belongings and vehicles in an unlawful and unjustified manner.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

64.     Neither the entry nor the manner by which the searches were conducted were lawfully justified by the circumstances confronting the officers.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

65.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

66.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

67.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in the manner described more fully above.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

68.     The misconduct described in this Count was caused and participated in by Defendants Cline, Morris and Kirby (the "Supervisory Defendants") in the manner described more fully above.

**ANSWER:**     Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

69.     As a result of the Defendant Officers' unconstitutional search and seizure, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiffs suffered emotional injuries, and other damages.

**ANSWER:**     To the extent directed at Defendant Finnigan, Defendant Finnigan denies the allegations contained in this paragraph.

### Count III - 42 U.S.C. § 1983
### Denial of Medical Attention

70.     Each Paragraph of this Complaint is incorporated as if fully stated herein.

**ANSWER:**     Defendant Finnigan restates his responses to the preceding paragraphs as if fully

set forth herein.

71.     As described more fully above, while incarcerated for over 24 hours at a Chicago police station, Rene Guerrero was denied necessary medical attention.

**ANSWER:**     Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

72.     In this manner, the conduct of the Defendant Officers was objectively unreasonable and they were deliberately indifferent to Rene Guerrero's objectively serious medical needs.

**ANSWER:**     Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

73.     As a result of the Defendant Officers' objectively unreasonable conduct and deliberate indifference to his necessary medical needs, Rene Guerrero suffered damages, including but not limited to physical injury and mental distress.

**ANSWER:**     Defendant Finnigan is without sufficient knowledge or information at this time to

form a belief as to the truth of the allegations contained in this paragraph.

### Count IV - 42 A.S.C. § 1983
### Equal Protection

74.     Each Paragraph of this Complaint is incorporated as if fully stated herein.

**ANSWER:**     Defendant Finnigan restates his responses to the preceding paragraphs as if fully

set forth herein.

75.     As described more fully above, Defendant Officers, while acting individually, jointly, and in conspiracy, as well as under color of law, denied Plaintiffs the equal protection of the law in violation of their Constitutional rights.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

76.     In their illegal searching and in their use of excessive force, Defendant Officers treated Plaintiffs differently than other similarly-situated individuals on the basis of their membership in a particular class.

**ANSWER:**     Defendant Finnigan denies the allegations contained in this paragraph.

77.     Specifically, Defendant Officers victimized Plaintiffs on the basis of their race and/or ethnicity, Latino.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

78.    Defendant Officers' conduct was motivated by racial animus and discriminatory purpose, and was not rationally related to any governmental interest. It affected minorities in a grossly disproportionate manner vis-a-vis similarly-situated Caucasian individuals, including that a disproportionate amount of Defendant Finnigan's and other Special Operations officers' victims have been Latino.

**ANSWER:**    Defendant Finnigan denies the allegations contained in this paragraph.

79.    As a result of the Defendant Officers' wrongful infringement of their rights, Plaintiffs suffered damages, including but not limited to physical injury and mental distress.

**ANSWER:**    To the extent directed at Defendant Finnigan, Defendant Finnigan denies the

allegations contained in this paragraph.

### Count V - 42 U.S.C. § 1983
### Failure to Intervene

80.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

81.    During the Constitutional violations committed against Plaintiffs, as described more fully above, unknown Defendant Officers stood by and watched without intervening to prevent the violations to which Plaintiffs were subjected.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

82.    The unknown Defendant Officers had a reasonable opportunity to prevent the violations of Plaintiffs' rights to be free from excessive force and illegal searching had they been so inclined, but failed to do so.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

83.    The unknown Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

**ANSWER:**    Defendant Finnigan makes no answer to this paragraph because it is directed at

one or more co-defendants.

84. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in the manner more fully described above.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

85. The misconduct described in this Count was caused and participated in by Defendants Cline, Morris and Kirby (the "Supervisory Defendants") in the manner more fully described above.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

86. As a result of the failure of these Defendant Officers to intervene to prevent the violations, the City's policy and practice, and the Supervisory Defendants' actions and omissions, Plaintiffs suffered pain and injury, as well as emotional distress.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

### Count VI - 42 U.S.C. § 12132
### Title II of the Americans with Disabilities Act

87. Each Paragraph of this Complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant Finnigan restates his responses to the preceding paragraphs as if fully set forth herein.

88. Plaintiff Rene Guerrero, a paraplegic, suffers from a physical impairment which substantially limits for him many of life's major activities.

**ANSWER:** Defendant Finnigan is without sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in this paragraph.

89. Defendant City of Chicago, a public entity, discriminated against Mr. Guerrero because of his disability and denied him the benefits of its public services.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

90. The City of Chicago denied Mr. Guerrero humane treatment and services during

his arrest and detention, such as proper physical movement and the ability to urinate while in extended Department custody.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

91.    As a result of the City's denial to Mr. Guerrero of its public services, he suffered pain and injury, as well as emotional distress.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

**Count VII - Supplemental State Law Claim**
**Indemnification**

92.    Each Paragraph of this Complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

93.    In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

**ANSWER:** Defendant Finnigan makes no answer to this paragraph because it is directed at one or more co-defendants.

**Requests for Relief**

Plaintiffs, RENE GUERRERO, PATRICIA GUERRERO, ARNULF0 GUERRERO, ANTONIO GUERRERO JR., CLARIBEL REYES, and MAGDALENA GUERRERO, on her own behalf and on behalf of LILYBETH GUERRERO, respectfully request that the Court:

A.    enter judgment in their favor and against Defendants CITY OF CHICAGO, CHICAGO SUPERVISORS PHILIP CLINE, TISA MORRIS, and DEBRA KIRBY, CHICAGO POLICE OFFICERS JEROME FINNIGAN, JOHN BURZINSKI, BARTOSZ MAKA, JOHN HURLEY, GUADALUPE SALINAS, FRANK VILLAREAL, DONOVAN MARKIEWICZ, KEITH HERRERA, ROBERT BARTLETT, PATRICK QUINN, MICHAEL SMITKA, KEITH SAVERSON, ANTHONY MARTIN, KEITH RIGAN, RAYMOND PIWNICKI, DUSTIN ROSCOE, PETER ZYGOWICZ, BRIAN FERGUSON, JOHN MCGOVERN, BRIAN QUINN, and UNKNOWN CHICAGO POLICE OFFICERS;

**ANSWER:** Defendant Finnigan denies that Plaintiffs are entitled to the relief that they seek.

B. award compensatory damages against Defendants CITY OF CHICAGO, CHICAGO SUPERVISORS PHILIP CLINE, TISA MORRIS, and DEBRA KIRBY, CHICAGO POLICE OFFICERS JEROME FINNIGAN, JOHN BURZINSKI, BARTOSZ MAIA, JOHN HURLEY, GUADALUPE SALINAS, FRANK VILLAREAL, DONOVAN MARKIEWICZ, KEITH HERRERA, ROBERT BARTLETT, PATRICK QUINN, MICHAEL SMITKA, KEITH SAVERSON, ANTHONY MARTIN, KEITH RIGAN, RAYMOND PIWNICKI, DUSTIN ROSCOE, PETER ZYGOWICZ, BRIAN FERGUSON, JOHN MCGOVERN, BRIAN QUINN, and UNKNOWN CHICAGO POLICE OFFICERS;

**ANSWER:** Defendant Finnigan denies that Plaintiffs are entitled to the relief that they seek.

C. award attorneys' fees against Defendants CITY OF CHICAGO, CHICAGO SUPERVISORS PHILIP CLINE, TISA MORRIS, and DEBRA KIRBY, CHICAGO POLICE OFFICERS JEROME FINNIGAN, JOHN BURZINSKI, BARTOSZ MAKA, JOHN HURLEY, GUADALUPE SALINAS, FRANK VILLAREAL, DONOVAN MARKIEWICZ, KEITH HERRERA, ROBERT BARTLETT, PATRICK QUINN, MICHAEL SMITKA, KEITH SAVERSON, ANTHONY MARTIN, KEITH RIGAN, RAYMOND PIWNICKI, DUSTIN ROSCOE, PETER ZYGOWICZ, BRIAN FERGUSON, JOHN MCGOVERN, BRIAN QUINN, and UNKNOWN CHICAGO POLICE OFFICERS;

**ANSWER:** Defendant Finnigan denies that Plaintiffs are entitled to the relief that they seek.

D. award punitive damages against Defendants CHICAGO SUPERVISORS PHILIP CLINE, TISA MORRIS, and DEBRA KIRBY, CHICAGO POLICE OFFICERS JEROME FINNIGAN, JOHN BURZINSKI, BARTOSZ MAKA, JOHN HURLEY, GUADALUPE SALINAS, FRANK VILLAREAL, DONOVAN MARKIEWICZ, KEITH HERRERA, ROBERT BARTLETT, PATRICK QUINN, MICHAEL SMITKA, KEITH SAVERSON, ANTHONY MARTIN, KEITH RIGAN, RAYMOND PIWNICKI, DUSTIN ROSCOE, PETER ZYGOWICZ, BRIAN FERGUSON, JOHN MCGOVERN, BRIAN QUINN, and UNKNOWN CHICAGO POLICE OFFICERS, all in their individual capacity; and

**ANSWER:** Defendant Finnigan denies that Plaintiffs are entitled to the relief that they seek.

E. grant any other relief this Court deems just and appropriate.

**ANSWER:** Defendant Finnigan denies that Plaintiffs are entitled to the relief that they seek.

## AFFIRMATIVE DEFENSES

### *FIRST AFFIRMATIVE DEFENSE: QUALIFIED IMMUNITY*

At all times material to the events alleged in the Complaint, Defendant Finnigan was a government official and performed discretionary functions. As to the federal claims against Defendant Finnigan, a reasonable police officer objectively viewing the facts and circumstances

that confronted Defendant Finnigan could have believed his action to be lawful, in light of clearly established law and the information that Defendant Finnigan possessed. Defendant Finnigan, therefore, is entitled to qualified immunity as a matter of law.

### *SECOND AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT*

As to all state law counts, under the Local Governmental and Governmental Employees Tort Immunity Act ("Illinois Tort Immunity Act"), Defendant Finnigan is not liable for any injury resulting from Defendant Finnigan's exercise of discretion as a public employee. 745 ILCS 10/2-201.

### *THIRD AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT*

Defendant Finnigan was working as a police officer at the time of the facts alleged in the Complaint. Under the Illinois Tort Immunity Act, Defendant Finnigan is not liable for the state claims alleged against him because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. Defendant Finnigan's conduct was not willful and wanton. 745 ILCS 102/2-202.

### *FOURTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT*

Defendant Finnigan was working as a police officer, and acting within the scope of his employment, at the time of the facts alleged in the Complaint. Under the Illinois Tort Immunity Act, Defendant Finnigan is not liable for the claims alleged against him because a public employee acting within the scope of his or her employment is not liable for an injury caused by the act or omission of another person. 745 ILCS 102/2-204.

### *FIFTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT*

Under Illinois Tort immunity law, Defendant Finnigan is not liable for any injury

allegedly caused by instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acted maliciously and without probable cause. Defendant Finnigan did not act maliciously or without probable cause. 745 ILCS 10/2-208.

### SIXTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT

Defendant Finnigan is not liable for any of Plaintiffs' alleged claims because he was a public employee acting within the scope of his employment, and is therefore not liable for any injury caused by entry upon any property where such entry is expressly or impliedly authorized by law. 745 ILCS 10/2-209.

### SEVENTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT

Defendant Finnigan is not liable for failure to provide adequate police protections or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and/or failure to identify or apprehend criminals. 745 ILCS 10/4-102.

### EIGHTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT

Defendant Finnigan, a public employee at the time of the events alleged in the Complaint, is not liable to pay punitive or exemplary damages in actions brought against him based on an injury allegedly arising out of an act or omission occurring within his scope of employment, while he was serving in a position involving the determination of policy or the exercise of discretion, when the alleged injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even if abused. 745 ILCS 10/2-213.

### NINTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT

Defendant Finnigan is not liable for any of Plaintiffs' alleged claims because a public employee, as such and acting within the scope of his employment, is not liable for an injury

caused by the good faith enforcement of a law that is unconstitutional, invalid or inapplicable, except to the extent they would have been liable had the enactment been constitutional, valid and applicable. 745 ILCS 10/2-203.

### TENTH AFFIRMATIVE DEFENSE: ILLINOIS TORT IMMUNITY ACT

Defendant Finnigan is not liable for any of Plaintiffs' alleged claims because a public employee, as such and acting within the scope of his/her employment, is not liable for an injury caused by his failure to enforce any law. 745 ILCS 10/2-205.

### ELEVENTH AFFIRMATIVE DEFENSE: CONTRIBUTORY NEGLIGENCE AND COMPARATIVE FAULT

To the extent any injuries or damages claimed by Plaintiffs were proximately caused, in whole or in part, by the negligent, willful, wanton, and/or other wrongful conduct on the part of Plaintiffs, any verdict or judgment obtained by Plaintiffs must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiffs by the jury.

At the time of the actions alleged in Plaintiffs' Complaint, 735 ILCS 5/2-1116 was in effect, which reduces a plaintiff's recovery according to his contributory negligence and bars his recovery entirely when a plaintiff is more than fifty percent (50%) of the proximate cause of the injury or damage for which recovery is sought.

### TWELFTH AFFIRMATIVE DEFENSE: FAILURE TO MITIGATE

To the extent Plaintiffs failed to mitigate any of their claimed injuries or damages, a verdict or judgment obtained by Plaintiffs must be reduced by an application of the principle that Plaintiffs have a duty to mitigate, commensurate with a degree of failure to mitigate attributed to Plaintiffs by the jury.

## *THIRTEENTH AFFIRMATIVE DEFENSES:  ESTOPPEL/LACHES/ISSUE PRECLUSION*

To the extent any Plaintiff was a party to a prior criminal proceeding relating to the claims alleged in the Amended Complaint, Plaintiffs may be estopped under the doctrines of claim and issue preclusion, res judicata, and or laches from pursuing one or more of the claims alleged herein under 42 U.S.C. § 1983.

## JURY DEMAND

Defendant Jerome Finnigan respectfully demands a trial by jury of this cause.

WHEREFORE, Defendant JEROME FINNIGAN respectfully requests that this Court enter judgment in his favor and against Plaintiffs as to all counts of Plaintiffs' Amended Complaint, and grant any other relief that this Court deems just.

Dated:  July 5, 2007                 RESPECTFULLY SUBMITTED,

                                 s/  Jacob M. Mihm
                           One of the Attorneys for Defendant Jerome  Finnigan

Michael A. Ficaro  (ARDC No. 798738)
Kathleen H. Champagne  (ARDC No. 6237321)
Jessica Thomas (ARDC No. 6270722)
Jacob M. Mihm  (ARDC No. 6272719)
UNGARETTI & HARRIS LLP
70 West Madison Street
Suite 3500
Chicago, IL 60602
312-977-4400 (phone)
312-977-4405 (facsimile)

## CERTIFICATE OF SERVICE

I, Jacob M. Mihm, an attorney, certify service of this document was accomplished pursuant to ECF on all Electronic Filing Users of record, this 5th day of July 2007.

/s/ Jacob M. Mihm